# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SREAM, INC., a California corporation; and ROOR INTERNATIONAL BV, a Foreign corporation,<br><br>Plaintiffs,<br><br>v.<br><br>AKBAL SINGH, et al.,<br><br>Defendant. | Case No. 1:18-cv-00987-DAD-BAM<br><br>FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT<br><br>(Doc. No. 11) |

Currently before the Court is Plaintiffs Sream, Inc. ("Sream") and RooR International BV ("RIBV") (collectively "Plaintiffs") motion for default judgment against Defendant Akbal Singh ("Defendant") filed on September 15, 2018.[1] (Doc. No. 11.) The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

The Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and vacated the hearing scheduled for October 26, 2018. Having considered the moving papers and the Court's file, the Court RECOMMENDS that Plaintiffs' motion for default judgment be GRANTED.

///

---

[1] Plaintiffs also filed this suit against ten Doe Defendants, but only moves for default judgment against Defendant Akbal Singh. Further, the allegations in the complaint concern the activities of Defendant Akbal Singh. Accordingly, this Court therefore RECOMMENDS that the Doe Defendants be dismissed from the action.

1

## I. FACTUAL BACKGROUND[2]

### A. History of the RooR Brand

Martin Birzle is an award-winning designer and manufacturer of smoker's products. Based in Germany, since 1995, Mr. Birzle marketed and sold products using the trademark "RooR." The RooR branded products, such as borosilicate jointed-glass water pipes, parts, and accessories related thereto, are widely recognized internationally and are highly renowned for their ornate and innovative characteristics. Compl. ¶ 9. For nearly two decades, Mr. Birzle worked to distinguish the RooR brand as the premier manufacturer of glass water pipes by emphasizing the brand's unwavering use of quality materials and focusing on scientific principles which facilitate a superior smoking experience. Id. at ¶ 10.

As a result of the continuous and extensive use of the trademark "RooR," Mr. Birzle was granted valid and subsisting federal statutory and common law rights to the RooR trademark. Mr. Birzle then assigned to RIBV all the rights associated with the RooR trademark, retroactively. The retroactive assignment to RIBV was duly recorded with the United States Patent and Trademark Office on January 10, 2018. Id. at ¶ 11 and Ex. A. RIBV is the owner of United States trademarks which are registered on the Principal Register and have become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065. The following is a list of RIBV's federally registered and common law trademarks:

a. U.S. Trademark Registration Number 3,675,839 for the word mark "RooR" and its logo in association with goods further identified in registration in international class 034.

b. U.S. Trademark Registration Number 2,307,176 for the word mark "RooR" and its logo identified below in association with goods further identified in the registration in international classes 025 and 034.

c. U.S. Trademark and Registration Number 2,235,638 for the word mark "RooR" and its logo identified below in association with goods further identified in the

---

[2] The factual background is derived from the Complaint ("Compl.") filed on July 23, 2018. (Doc. No. 1.)

registration in international class 021.

    d. Common law and unregistered state law rights in certain variants of the RooR

            marks ("RooR Marks")

Id. at ¶ 12 and Ex. B.

### B. RooR Brand in the United States

Sream is a California corporation that has manufactured glass products and various smokers' articles, including water pipes, for nearly a decade. Additionally, since 2013, Sream has been the exclusive licensee for the RooR Marks within the United States. Compl. at ¶ 13. Pursuant to a licensing agreement between Sream and Mr. Birzle (the "License Agreement"), Sream has used the RooR Marks in commerce throughout the United States continuously since 2013, in connection with the manufacturing of smokers' products. RIBV, as the current owner of the RooR Marks, ratified the License Agreement under the same terms and conditions on March 7, 2018. Id. at ¶ 14. Under the License Agreement, Sream also advertises, markets, and distributes water pipes, parts, and accessories related thereto and other smokers' articles in association with the RooR Marks. Id. at ¶ 15. Pursuant to the License Agreement, Sream also has been granted all rights to sue to obtain damages and injunctive relief for past and future infringement of the RooRMarks in the United States (hereinafter the "Enforcement Rights"). The License Agreement provides that the Enforcement Rights granted to Sream under the License Agreement are tantamount to those of an assignee, as contemplated by trademark law. The License Agreement also appoints Sream as the trademark owner's legal representative to police and enforce all rights in the RooR Marks within the United States. Id. at ¶ 16.

The RooR Marks are distinctive to both the consuming public and the Plaintiffs' trade. Sream's RooR branded products are made from superior materials – glass that is nearly unbreakable – and are hand-blown by individual artists. RIBV has maintained, and demanded of Sream, the same standards that made RooR a recognizable high-quality brand. Id. at ¶ 17.

Since 2013, Sream has worked in conjunction with Mr. Birzle and now RIBV to build significant goodwill in the RooR brand in the United States. Together, the Plaintiffs have spent substantial time, money, and effort in developing consumer recognition and awareness of the

1 RooR brand via point of purchase materials and displays, through their websites, by attending industry trade shows, and through social media promotion. A wide array of websites, magazines, and specialty shops include advertising of RooR branded products, which are immediately identifiable. Id. at ¶ 18. Sream sells its products under the RooR Marks to its authorized distributors in the United States, including in California. Sream has over a thousand authorized distributors nationwide which include retail stores specializing in smoker's products. Id. at ¶ 19.

It is because of the recognized quality and innovation associated with the RooR Marks that consumers are willing to pay higher prices for genuine RooR branded products. For example, a RooR brand 45 cm water pipe retails for $300 or more, while a non-RooR branded product of equivalent size will usually sell for less than $100. Demand for authentic RooR products is strong. Indeed, sales of products bearing the RooR Marks in the United States have been in excess of five million dollars for the last three years. Id. at ¶ 20.

It is because of their higher sales value that RooR branded products are targeted by counterfeiters. These unscrupulous people and entities tarnish the RooR brand by unlawfully selling water pipes that have identical, or nearly identical, versions of the RooR Marks affixed to products that are made with inferior materials and technology. Thereby leading to significant illegitimate profits by store owners, such as Defendant. In essence, Defendant misleads consumers by selling them low grade products that free ride on the goodwill of the RooR brand, and in turn, Defendant reaps substantial ill-gotten profits. Defendant's conduct contributes to the complete flooding of the marketplace with counterfeit products, which results in lost sales and damages to the Plaintiffs and irreparable harm to the RooR brand's image. Id. at ¶ 21.

The current U.S. marketplace is saturated with counterfeit products – like those Defendant has sold. As such, the Plaintiffs have been forced to scrupulously enforce their rights in order to protect the RooR Marks against infringement. By exercising its Enforcement Rights, Sream, with the cooperation of RIBV, has proactively and successfully policed the unauthorized use of the RooR Marks and/or counterfeit RooR branded products nationwide. The Plaintiffs have had to bear great expense to seek out and investigate suspected counterfeiters in their attempt to clean up the marketplace. In many instances, the Plaintiffs have had to seek redress

from the courts in order to enforce their rights in the RooR Marks. Id. at ¶ 22.

### C. Defendant's Activities

Defendant, an individual doing business as "Cigarettes for Less," operates a retail smoke shop in Fresno, California. Defendant has, without consent of the Plaintiffs, offered to sell and sold within the United States (including within this judicial district) water pipes that were neither made by the Plaintiffs nor by a manufacturer authorized by the Plaintiffs (the "Counterfeit Good(s)"). Defendant sold in commerce Counterfeit Goods using reproductions, counterfeits, copies and/or colorable imitations of one or more of the RooR Marks (the "Infringing Mark"). Id. at ¶ 23.

On December 7, 2015, Plaintiffs' investigator purchased a glass water pipe with a RooR Mark affixed to it, from Defendant, for a cost of $14.41, charged to the account of the Plaintiffs' investigator. Id. at ¶ 24. Upon receipt, images and/or the physical unit of the product purchased from Defendant were inspected by the Plaintiffs' agent to determine its authenticity. The inspection of the purchased item confirmed that the water pipe Defendant sold to the Plaintiffs' investigator was a Counterfeit Good with an Infringing Mark affixed to it. Id. at ¶ 25 and Ex. C.

Defendant's use of the RooR Marks includes importing, advertising, displaying, distributing, selling, and/or offering for sale unauthorized copies of RooR branded products. Defendant's offering to sell, selling, importing and encouraging others to import Counterfeit Goods bearing the Infringing Mark in this manner was and is likely to cause confusion or to cause mistake and/or deceive consumers who purchase the Counterfeit Goods. Id. at ¶ 26. Defendant's use of the Infringing Mark began long after Mr. Birzle obtained the trademark registrations alleged above, and after Sream's license and subsequent adoption and use of the RooR Marks. Neither Plaintiffs nor any authorized agents have consented to Defendant's use of the RooR Marks, or any use of reproductions, counterfeits, copies and/or colorable imitations thereof. Id. at ¶ 27. Defendant used images and names identical to or confusingly similar to the RooR Marks, to confuse customers and aid in the promotion and sales of Counterfeit Goods under the Infringing Mark. Id. at ¶ 28. The Infringing Mark affixed to the Counterfeit Goods that Defendant has manufactured, distributed, provided, marketed, advertised, promoted, offered for

1 sale, and/or sold, is confusingly identical or similar to the RooR Marks that Sream affixes to its water pipes. Id. at ¶ 29.

The water pipes Defendant sells and offers for sale under the Infringing Mark are made of substantially inferior materials and inferior technology as compared to genuine RooR brand products. Defendant has manufactured, distributed, provided, marketed, advertised, promoted, offered for sale, and sold its water pipes under the Infringing Mark through its retail convenience store. Id. at ¶¶ 30-31.

Upon information and belief, Defendant has marketed, advertised, and promoted its Counterfeit Goods under the Infringing Mark through point of purchase displays, and/or its website, and/or via social media promotion. Upon information and belief, Defendant also offers for sale and sells Counterfeit Goods under the Infringing Mark to a vast array of consumers ranging from the most sophisticated tobacco connoisseurs to novice smokers. Id. at ¶¶ 32-33.

Defendant's infringing acts have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Counterfeit Goods sold by Defendant, and are likely to deceive, and have deceived, the relevant consuming public into mistakenly believing that the Counterfeit Goods sold by Defendant originate from, are associated or affiliated with, or otherwise authorized by Sream and/or RIBV. Defendant's acts are willful with the deliberate intent to trade on the goodwill of the RooR Marks, cause confusion and deception in the marketplace, and divert potential sales of Sream's water pipes to Defendant. Id. at ¶¶ 34-35.

Defendant's acts are causing and, unless restrained, will continue to cause damage and immediate irreparable harm to the Plaintiffs, the RooR Marks, and to its valuable reputation and goodwill with the consuming public for which the Plaintiffs have no adequate remedy at law. As a proximate result of the unfair advantage accruing to Defendant's business from deceptively trading on the Plaintiffs' advertising, sales, and consumer recognition, Defendant has made and will continue to make substantial profits and gains to which they are not in law or equity entitled. The injuries and damages sustained by the Plaintiffs have been directly and proximately caused by Defendant's wrongful advertisement, promotion, distribution, sale and offers for sale of their

goods bearing infringements or counterfeits of the RooR Marks. Defendant's sale of Counterfeit Goods under the Infringing Mark has resulted in lost business opportunities, customers, contracts, and sales to the Plaintiffs. Through such business activities, Defendant purposefully derived direct benefits from its interstate commerce activities by targeting foreseeable purchasers in the State of California, and in doing so, have knowingly harmed the Plaintiffs. Id. at ¶¶ 36-40.

By its wrongful conduct, Defendant has traded upon and diminished the goodwill of the RooR Marks. Furthermore, the sale and distribution of Counterfeit Goods by Defendant has infringed upon the above-identified federally registered trademarks. The spurious marks or designations used by Defendant in interstate commerce are identical with, or substantially indistinguishable from, the RooR Marks on goods covered by the RooR Marks. Such use therefore creates a false affiliation between Defendant and the Plaintiffs, and the RooR Marks. Defendant's acts have damaged, and will continue to damage the Plaintiffs, and the Plaintiffs have no adequate remedy at law. Defendant's wrongful acts will continue unless enjoined by the Court. Id. at ¶¶ 41-45.

## II. PROCEDURAL BACKGROUND

Plaintiffs filed the underlying civil action on July 23, 2018, asserting claims for counterfeiting, trademark infringement, false designation of origin and unfair competition under the Lanham Act (15 U.S.C. §§ 1051 *et seq*.). Plaintiffs personally served Defendant Akbal Singh on July 26, 2018. (Doc. No. 6.) Defendant did not respond to the complaint, and on August 20, 2018, Plaintiffs filed a request for entry of default. (Doc. No. 7.) On August 21, 2018, the Clerk of the Court entered default against Defendant Akbal Singh. (Doc. No. 8.) Thereafter, on September 15, 2018, Plaintiffs file the instant motion for default judgment. (Doc. No. 11.) By the motion, Plaintiffs request default judgment in the amount of $200,000 for statutory damages and $9,890.00 in attorney's fees and costs. Plaintiffs also request an injunction. (Doc. No. 11.)

## II. LEGAL STANDARD FOR DEFAULT JUDGMENT

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff can apply to the court for a default judgment against a defendant that has failed to plead or otherwise defend against the action. Fed. R. Civ. P. 55(b)(2). "Upon default, the well-pleaded allegations of a complaint

relating to liability are taken as true." Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983); TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986); PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002).

**III. DISCUSSION**

**A. Standing**

Plaintiff Sream initially filed an action against Defendant Akbal Singh on March 20, 2018, in case number 1:18-cv-00379-AWI-SAB, and sought default judgment. (1:18-cv-00379-AWI-SAB, ECF No. 10.) Prior to addressing the default judgment motion, the court ordered Sream to file supplemental briefing on whether it had standing to bring suit under the Lanham Act based on the trademarks at issue. (Id. at ECF No. 13.) Sream did not file supplemental briefing, and instead sought voluntary dismissal of the action without prejudice and the action was closed. (Id. at ECF Nos. 15, 16.) Thereafter, on July 23, 2018, Plaintiff Stream, along with Plaintiff RIBV, instituted this action against Defendant Singh based on the same underlying conduct. In light of the prior court's inquiry, this Court finds it prudent to separately address the issue of whether Plaintiffs have standing to bring suit for trademark infringement under the Lanham Act.

Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1) provides a cause of action for trademark infringement of a registered trademark. This cause of action is available only to "the registrant," 15 U.S.C. § 1114(1), which includes "the legal representatives, predecessors, successors and assigns of such applicant or registrant[,]" 15 U.S.C. § 1127. In this instance, evidence before the Court indicates that Mr. Birzle is the registrant of the RooR trademarks at

issue here. However, Mr. Birzle has assigned to RIBV all the rights associated with the RooR trademarks, retroactively, and the retroactive assignment was duly recorded with the United States Patent and Trademark Office on January 10, 2018. (Compl. at ¶ 11 and Ex. A.) Plaintiffs now assert that RIBV is the owner of the registered trademarks. As the assignee and owner, RIBV therefore has standing to bring the instant trademark action.

As to Plaintiff Sream, Plaintiffs allege that pursuant to a licensing agreement, Sream has been contractually granted all enforcement rights to obtain damages and injunctive for past and future infringement of the RooR Marks in the United States. (Compl. at ¶ 16.) The licensing agreement also provides that the enforcement rights granted to Stream are tantamount to those of assignee, and Sream is appointed as the trademark owner's legal representative to police and enforce all rights in the RooR Marks within the United States. (Id.)

District courts in this circuit have concluded that an exclusive licensee of a federal trademark can have standing to sue for trademark infringement under Section 32 of the Lanham Act.4, but only "where the licensing agreement both grants an exclusive license and grants to the exclusive licensee a property interest in the trademark, or rights that amount to those of an assignee." Halcyon Horizons, Inc. v. Delphi Behavioral Health Grp., LLC, No. 17-CV-00756-JST, 2017 WL 1956997, at *3 (N.D. Cal. May 11, 2017); see also Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc., No. C 12-05523 WHA, 2013 WL 1007666, at *6 (N.D. Cal. Mar. 13, 2013), at *26 (N.D. Cal. Mar. 11, 2013) (quoting Visa U.S.A., Inc. v. First Data Corp., No. C 02-01786, 2005 WL 6271242, at *3 (N.D. Cal. Aug. 16, 2005)). Accepting the allegations of the complaint as true, Sream is the exclusive licensee and has been contractually granted all enforcement rights to obtain damages and injunctive relief for past and future infringement of the RooR Marks in the United States.

Based on the foregoing, the Court finds that Plaintiffs have standing to bring suit related to the RooR Marks, either independently or collectively.

**B. Service of Process**

Plaintiffs are suing an individual in this action, Akbal Singh. Federal Rule of Civil Procedure 4 sets forth the requirements for serving an individual within a judicial district of the

United States. Pursuant to Rule 4(e)(2), an individual may be served by delivering a copy of the summons and of the complaint to the individual personally. Fed. R. Civ. P. 4(e)(2)(A). According to the proof of service on file, Defendant Akbal Singh was personally served. (Doc. No. 6.) Accordingly, the Court finds that Plaintiffs properly served Defendant Akbal Singh.

### C. The Eitel Factors Weigh in Favor of Default Judgment

As discussed below, the Court finds that the Eitel factors weigh in favor of granting default judgment.

#### 1. Possibility of Prejudice to Plaintiff

The first factor considers whether a plaintiff would suffer prejudice if default judgment is not entered. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Generally, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. Id.; Moroccanoil, Inc. v. Allstate Beauty Prods., 847 F.Supp.2d 1197, 1200-01 (C.D. Cal. 2012). The Court finds Plaintiffs would be prejudiced if default judgment is not granted. As Defendant has not appeared in this action, default judgment is the only means by which Plaintiffs can recover. Therefore, this factor weighs in favor of default judgment.

#### 2. Merits of Plaintiff's Claims and Sufficiency of the Complaint

The second and third Eitel factors, taken together, "require that [the] plaintiff[s] state a claim on which [they] may recover." PepsiCo, Inc., 238 F. Supp. 2d at 1175. Notably a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007). Here, Plaintiffs have forwarded claims for (i) willful trademark infringement and counterfeiting of the RooR trademarks in violation of 15 U.S.C. §§ 1114 and 1117; (ii) willful trademark infringement (false designation) of in violation of 15 U.S.C. § 1125; (iii) willful unfair competition in violation of California Bus. & Prof. Code §§ 17200; and (iv) common law unfair competition.

##### Trademark Counterfeiting and Infringement and False Designation of Origin

"To prevail on its claims under the Lanham Act for trademark infringement, counterfeiting and false designation of origin, plaintiff must demonstrate that, '(1) it owns a valid and protectable trademark, and (2) the defendant used in commerce a similar mark without

authorization in a manner likely to cause consumer confusion, deception, or mistake.'" Chan Luu, Inc. v. Guang Gao, No. CV 13-2997 FMO (JCX), 2014 WL 12567141, at *4 (C.D. Cal. Jan. 27, 2014) (citing Philip Morris USA Inc. v. Liu, 489 F.Supp.2d 1119, 1122 (C.D. Cal. 2007)); Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1202 (9th Cir. 2012) ("To prevail on its Lanham Act trademark claim, a plaintiff "'must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.'") (citation omitted); Kythera Biopharmaceuticals, Inc. v. Lithera, Inc., 998 F.Supp.2d 890, 897 (C.D. Cal. 2014) ("A claim for false designation of origin under 15 U.S.C. § 1125 requires proof of the same elements as a claim for trademark infringement under 15 U.S.C. § 1114.")

Here, Plaintiffs have alleged valid, protectable trademarks, and that RIBV is the owner of the RooR Marks and Sream is the exclusive licensee for the marks in the United States. See Compl. at ¶¶ 11-14 and Exs. A and B. Plaintiffs also have alleged that Defendant, without Plaintiffs' consent, sold goods using reproductions, counterfeits, copies and/or colorable imitations of one or more of the RooR Marks, which are confusingly similar to the RooR Marks. Compl. at ¶¶ 23-45. Additionally, Plaintiffs have alleged that Defendant's conduct is willful with the deliberate intent to trade on the goodwill of the RooR Marks, cause confusion and deception in the marketplace, and divert potential sales of Sream's water pipes to Defendant. Compl. at ¶ 35. The Court therefore finds that Plaintiffs' complaint sufficiently states claims for counterfeiting, trademark infringement and false designation of origin under the Lanham Act.

### California Unfair Competition, California Bus. & Prof. Code § 17200 and Common Law Unfair Competition

"Proof of trademark infringement under the Lanham Act independently constitutes unfair competition under California law." Liu, 489 F.Supp.2d at 1123; see also Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135 (9th Cir. 2002) ("[A]ctions pursuant to ... § 17200 are substantially congruent to claims made under the Lanham Act.") (citation omitted). As Plaintiffs' complaint sufficiently states a claim for trademark infringement under the Lanham Act, it also sufficiently states a claim for unfair competition under California Business and Professions Code § 17200.

1 Similarly, the Ninth Circuit "has consistently held that state common law claims of unfair competition ... are 'substantially congruent' to claims made under the Lanham Act." Kythera, 998 F.Supp.2d at 897-98 (citing Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994)). Given that Plaintiffs' complaint sufficiently states a claim for trademark infringement under the Lanham Act, it also sufficiently states a claim for common law unfair competition.

For the reasons set forth above, the Court finds that the second and third Eitel factors weigh in favor of default judgment.

### 3. The Sum of Money at Stake in the Action

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F Supp.2d at 1176; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Here, Plaintiffs seek a total judgment of $200,000.00, exclusive of attorneys' fees and costs. (Doc. No. 11-1 at 6.) The Court finds that the amount of money at stake is not significant in relation to Defendant's conduct in illegally selling counterfeit products. Accordingly, this factor does not weigh against entry of default judgment.

### 4. The Possibility of a Dispute Concerning Material Facts

The facts of this case are straightforward, and Plaintiffs have provided the Court with well-pled allegations and declarations with exhibits in support. Following the clerk's entry of default, the Court may assume the truth of well-pled facts in the complaint and, thus, there is no likelihood that any genuine issue of material fact exists. Further, Defendant's failure to file an answer in this case or a response to the instant motion supports the conclusion that the possibility of a dispute as to material facts is minimal. See, e.g., Elektra Entm't Grp. Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."). This factor therefore weighs in favor of default judgment.

### 5. Whether the Default Was Due to Excusable Neglect

The sixth Eitel factor considers the possibility that Defendant's default resulted from excusable neglect. PepsiCo, Inc., 238 F.Supp.2d at 1177. Courts have found that where a

defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. Shanghai Automation Instrument Co. v. Kuei, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001).

Upon review of the record, the Court finds that the default was not the result of excusable neglect. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. According to the Court's docket, Plaintiffs properly served Defendant in this action. (Doc. No. 6.) Moreover, Plaintiffs served Defendant with a copy of the request for entry of default and the motion for default judgment. (Doc. No. 7 at 5; Doc. No. 11-5.) Despite ample notice of this lawsuit and Plaintiffs' intention to seek a default judgment, Defendant has not appeared to date. Thus, the record suggests that Defendant has chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this factor weighs in favor of the entry of a default judgment.

### 6. The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Although the Court is cognizant of the policy favoring decisions on the merits, that policy is unavailable here because Defendant has not responded. Accordingly, the Court finds that this factor does not weigh against entry of default judgment.

Upon consideration of the Eitel factors as delineated above, the Court concludes that Plaintiffs are entitled to the entry of default judgment against Defendant. The Court therefore will recommend that Plaintiffs' Motion for Default Judgment be granted.

**IV. Requested Relief**

Plaintiffs seek the following relief: (1) statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c) in the amount of $200,000.00; (2) a permanent injunction enjoining Defendant from continuing to infringe the RooR Marks; and (3) costs and attorneys' fees in the amount of $9,890.00. (Doc. No. 11-1 at 6.)

### A. Statutory Damages

The Lanham Act authorizes recovery of statutory damages for use of counterfeit marks, and provides, in relevant part, as follows:

> In a case involving the use of a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—
>
> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).

The Lanham does not provide guidelines for courts to determine an appropriate award of statutory damages. However, the Ninth Circuit has directed that damage awards should make "deliberate acts of trade-mark infringement unprofitable." Maier Brewing Co. v. Fleischmann Distilling Corp., 390 F.2d 117, 123 (9th Cir. 1968.) As Plaintiffs point out, statutory damage awards by courts vary widely. See e.g., Otter Products LLC v. Ace Colors Fashion, Inc., No. 2:14-cv-00141-ODW(ASx), 2014 WL 1512189, at *4 (C.D. Cal. Apr. 15, 2014) (awarding $35,000 upon evidence of the sale of eleven counterfeit items after the plaintiff requested $100,000); E.I. Du Pont de Nemours and Co. v. Drabek, No. CV 12-10574 DDP AJWx, 2013 WL 4033630, at *7 (C.D. Cal. May 3, 2013) (declining to issue the statutory maximum award because the plaintiff presented no evidence regarding the extent of sales by the defendant, but awarding $25,000 per product based on evidence of 21 products bearing the plaintiff's marks); see also Sream, Inc. & Roor International BV v. Andy's Smoke Shop, Inc., No. 18cv1676-MMA (RBB), 2018 WL 5279130, at *6 (S.D. Cal. Oct. 23, 2018) (awarding statutory damages for one infringed trademark totaling $25,000); Sream, Inc. v. Walsh, No. EDCV 16-2538-JGB (KKx), 2017 WL 8230031, at *6 (C.D. Cal. Feb. 14, 2017) (awarding $10,000 based on sale of one infringing product where plaintiff requested $300,000); Sream, Inc. v. Hanoun, No. ED CV 16-

01394-AB(JCx), 2016 WL 11002361, at *4 (C.D. Cal. Oct. 28, 2016) (finding $50,000 to be reasonable statutory award for willful conduct on evidence of one product sold); Sream, Inc. v. Elgawly, No. CV 16-840-R, 2016 WL 4967710, at *3 (C.D. Cal. Sept. 14, 2016) (awarding statutory damages in the amount of $50,000.01 for willful conduct and evidence of one product sold).

As indicated, Plaintiffs seek $200,000 in statutory damages under the Lanham Act for Defendant's willful conduct. Although the amount requested is within the range prescribed by statute, the Court finds that this amount should be reduced. Plaintiffs have presented evidence of the sale of a single counterfeit water pipe containing a "RooR" label for $14.41. (Doc. No. 11-3, Ex. D to Declaration of Michael Mottesheard Sr.) Although Defendant may have sold more counterfeit products, Plaintiffs also admit that Defendant likely "hasn't sold millions of counterfeit products." (Doc. No. 11-1 at 18.) There also is no evidence available to determine how many counterfeits Defendant has sold. Because Defendant sells the counterfeited products for a fraction of the authentic RooR products, there is no basis to support a belief that Defendant has "reaped substantial benefit" from the unlawful activities. The Court therefore finds that an award of $20,000 is a reasonable statutory award under the circumstances.

**B.     Injunctive Relief**

Plaintiffs seek a permanent injunction. Under the Lanham Act, a district court has the "power to grant injunctions, according to the principles of equity and upon such terms as the court deems reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a). "[A]ctual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action." Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc., 736 F.3d 1239, 1249 (9th Cir. 2013) (citations omitted). To obtain a permanent injunction, a plaintiff must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391-92 (2006). The Ninth Circuit has determined "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by the threat of continuing infringement." Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir.1988). In light of the likelihood of confusion arising from Defendant's use of the RooR mark, the Court finds that injunctive relief is appropriate to prevent Defendant from continued trademark violations and unfair competition.

### C. Attorneys' Fees and Costs

Plaintiff seeks a total amount of $9,890.00 in attorneys' fees and $480.00 in costs. (Doc. No. 11-1 at 21.) An award of attorney fees is available under the Lanham Act, which permits the Court to "award reasonable attorney fees to the prevailing party" in "exceptional" cases. 15 U.S.C. § 1117(a). The Ninth Circuit has determined that a case is "exceptional" when "the acts of infringement can be characterized as malicious, fraudulent, deliberate, or willful." Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1023 (9th Cir. 2002). "Additionally, a case may be deemed 'exceptional,' and merit an award of attorneys' fees under the Lanham Act, when Defendant disregards the proceedings and does not appear." Premier Pool Mgmt. Corp. v. Lusk, No. CIV S-11-2896 GEB CKD, 2012 WL 1593206, at *8 (E.D. Cal. May 4, 2012) (citing Castworld, 219 F.R.D. at 502), report and recommendation adopted, No. 2:11-CV-2896 GEB CKD, 2012 WL 13066041 (E.D. Cal. May 23, 2012). Here, Plaintiffs alleged that Defendant's conduct was willful. Moreover, Defendant has failed to appear despite having adequate notice of this lawsuit. The Court thus finds an award of attorneys' fees appropriate.

To determine a reasonable attorneys' fee, or "lodestar," the starting point is the number of hours reasonably expended multiplied by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The Court, in considering what constitutes a reasonable hourly rate, looks to the prevailing market rate in the relevant community. Blum v. Stenson, 465 U.S. 886, 895 (1984). The "relevant community" for the purposes of the lodestar calculation is generally the forum in which the district court sits. Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013). The relevant community here is the Fresno Division of the Eastern District of

California.

In the Fresno Division of the Eastern District of California, attorneys with twenty or more years of experience are awarded $350.00 to $400.00 per hour. See, e.g. Leprino Foods Co. v. JND Thomas Co., Inc., No. 1:16-cv-01181-LJO-SAB, 2017 WL 128502, at *13 (E.D. Cal. Jan. 12, 2017), report and recommendation adopted in part, No. 1:16-cv-01181-LJO-SAB, 2017 WL 432480 (E.D. Cal. Feb. 1, 2017) (finding $400.00 per hour a reasonable hourly rate for attorney with more than thirty years of experience); Sanchez v. Frito-Lay, Inc., No. 1:14-CV-00797 AWI-MJS, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015), report and recommendation adopted, No. 1:14-CV-797-AWI-MJS, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015) (finding reasonable rate for attorney with twenty years of experience was $350 per hour in a wage and hour class action); Willis v. City of Fresno, No. 1:09-CV-01766-BAM, 2014 WL 3563310, at *12 (E.D. Cal. July 17, 2014) adhered to on reconsideration, No. 1:09-CV-01766-BAM, 2014 WL 4211087 (E.D. Cal. Aug. 26, 2014) (awarding attorneys with over twenty five years of experience $380.00 per hour). Generally, "$300 is the upper range for competent attorneys with approximately a decade of experience." Barkett v. Sentosa Props. LLC, No. 1:14–CV–01698–LJO, 2015 WL 5797828, at *5 (E.D. Cal. Sept. 30, 2015) (O'Neill, J.) (citing Silvester v. Harris, No. 1:11–CV–2137 AWI SAB, 2014 WL 7239371, at *4 (E.D. Cal. Dec. 17 2014). For attorneys with "less than ten years of experience ... the accepted range is between $175 and $300 per hour." Silvester, 2014 WL 7239371 at *4 (citing Willis v. City of Fresno, 1:09-cv-01766-BAM, 2014 WL 3563310 (E.D. Cal. July 17, 2014); Gordillo v. Ford Motor Co., No. 1:11-cv-01786 MJS, 2014 WL 2801243 (E.D. Cal. June 19, 2014)). Finally, "[t]he current reasonable hourly rate for paralegal work in the Fresno Division ranges from $75 to $150, depending on experience." Silvester, 2014 WL 7239371, at *4 (citations omitted); cf. Franco v. Ruiz Food Prods., Inc., No. 1:10–cv–02354–SKO, 2012 WL 5941801, at *20 (E.D. Cal. Nov. 27, 2012) (approving a rate of "$100 per hour" for "legal assistants).

Here, Plaintiffs provide no information regarding rates per hour or hours expended. Instead, Plaintiffs assert that its counsel has "allocated 27.2 hours of time to the prior case, and

1 an additional 6.8 hours to the instant matter,"[3] and charges "between $275/hour to $400/hour
2 depending on the skill and experience of the lawyer involved in the matter, plus $75/hour for
3 paralegals." (Doc. No.11-2, Vakil Decl. at ¶ 13.) Despite the deficiency in Plaintiffs' moving
4 papers, the Court takes judicial notice of the State Bar of California website, which shows that
5 Imran Vakil, the attorney of record in this action, was admitted to practice in California in 2007,
6 and has more than 10 years of experience. Given this information, the Court finds a rate of $325
7 per hour to be reasonable for the services of Imran Vakil. With this hourly rate in mind, the
8 amount of $9,890.00 equates with approximately 30 hours of work incurred in pursuing this
9 action. The Court finds this amount reasonable, and consistent with the number of hours
10 reportedly incurred by counsel's firm in pursuing a trademark infringement action against
11 Defendant. Accordingly, the Court will recommend that attorney fees be awarded in the amount
12 of $9,890.00.

13 Additionally, Plaintiffs seek $480.00 in costs, which includes $400.00 in complaint filing
14 fees and $80.00 in service fees attributable to Defendant. As indicated above, the Lanham Act
15 allows for recovery of costs. 15 U.S.C. § 1117(a); Castworld, 219 F.R.D. at 502-03 ("[W]hen a
16 violation of any right under the registrant of a mark registered in the Patent Office, or a violation
17 under § 43(a), shall have been established in a civil action arising under the Lanham Act, the
18 plaintiff shall be entitled, subject to the principles of equity, to recover the costs of the action.").
19 A finding of Defendant's liability under the Lanham Act entitles Plaintiffs to recover costs in this
20 action. The Court therefore recommends that Plaintiffs' request for an award of costs in the
21 amount of $480.00 be granted.

## V. CONCLUSION AND RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiffs' motion for default judgment (Doc. No. 11) be granted; and
2. Default judgment be entered in favor of Plaintiffs and against Defendant Akbal

---

[3] As noted above, Plaintiffs initially pursued litigation against Defendant arising out of the same facts in Case No. 1:18-cv-00379-AWI-SAB, but for "certain tactical reasons, that case was dismissed *without prejudice* on June 29, 2018," and re-filed as the instant litigation on July 23, 2018. (Doc. No. 11-2, Declaration of Imran F. Vakil ("Vakil Decl.") at ¶ 3.)

|   |   |
|---|---|
| 1 | Singh in the amount of $30,370.00, which is comprised of statutory damages in the |
| 2 | amount of $20,000, attorneys' fees in the amount of $9,890.00 and costs in the amount of |
| 3 | $480.00; |
| 4 | 4.  Defendant be permanently enjoined as follows: |

Defendant, and Defendant's agents, employees, officers, directors, owners, representatives, successor companies, related companies, and all persons acting in concern or participation with Defendant are permanently restrained and enjoined from infringing upon the RooR Marks[4] directly or contributorily, in any manner, including:

(a) import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment, licensing, development, display, delivery, marketing advertising or promotion of the counterfeit RooR product identified in the complaint and any other unauthorized RooR product, counterfeit, copy or colorful imitation thereof;

(b) Assisting, aiding or attempting to assist or aid any other person or entity in performing any of the prohibited activities referred to in Paragraph (a) above.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **November 2, 2018**          /s/ Barbara A. McAuliffe
                                        UNITED STATES MAGISTRATE JUDGE

---

[4] United States Trademark Registration Nos. 3,675,839, 2,307,176, and 2,235,638